**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THOMAS E. REINHARDT, | ) | |
| | ) | Civil Action No. 11-137 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | District Judge Terrence F. McVerry |
| | ) | |
| JON D. FISHER, Superintendent; | ) | Magistrate Judge Cynthia Reed Eddy |
| DISTRICT ATTORNEY FOR THE | ) | |
| COUNTY OF BEAVER; and the | ) | |
| ATTORNEY GENERAL FOR THE | ) | |
| STATE OF PENNSYLVANIA, | ) | |
| | ) | |
| Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

### II.     REPORT

Petitioner, Thomas E. Reinhardt, a state prisoner incarcerated at the State Correctional Institution at Smithfield, located in Huntingdon, Pennsylvania has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in connection with his convictions for arson and related charges. For the reasons that follow, the Petition should be denied.

#### A. Relevant Factual and Procedural History

In his second PCRA proceeding, the Superior Court set forth the following relevant factual history.

The pertinent facts and procedural history may be summarized as follows: On April 9, 2008, Appellant was charged with three counts of arson, one count of causing/risking a catastrophe, and twelve counts of recklessly endangering another person after he intentionally set fire to his home and it spread to two neighboring houses, completely destroying one and severely damaging the other. Represented by the public defender, on April 17, 2008, Appellant waived his right to a preliminary hearing. On June S, 2008, privately-retained counsel ("trial counsel") entered his appearance on Appellant's behalf. Trial counsel entered into plea negotiations with the Commonwealth, resulting in a plea agreement which provided that, in return for Appellant's plea of guilty to one count of arson and one count of causing/risking a catastrophe, the Commonwealth would recommend a sentence of no less than two and one-half to five years to no more than five years on each count, to run consecutively, for an aggregate five to ten-year prison term. On September 3, 2008, Appellant entered guilty pleas for the above offenses and was sentenced in accordance with the plea agreement. Appellant did not file a direct appeal.

On February 3, 2009, Appellant filed his first pro se PCRA petition. Within this petition, Appellant asserted that he was entitled to postconviction relief because trial counsel was ineffective, the trial court imposed a sentence greater than the lawful maximum, and because the sentence imposed was excessive. On February 11, 2009, the PCRA court appointed counsel ("PCRA counsel"). On May 6, 2009, PCRA counsel filed a petition to withdraw and a no-merit letter pursuant to Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988), and Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988). In his no-merit letter, PCRA counsel addressed Appellant's claim that the sentence he received was too harsh and that the two offenses to which he entered his plea should have merged for sentencing purposes. PCRA counsel also addressed Appellant's claim that the two crimes were improperly graded as first-degree felonies. Finally, PCRA counsel averred that he had reviewed the entire record and found no other meritorious claims.

On May 7, 2009, the PCRA court entered an order allowing PCRA counsel to withdraw and providing notice to Appellant, pursuant to Pa.R.Crim.P. 907, of the court's intent to dismiss Appellant's petition without a hearing. The PCRA court also issued a rule to show cause upon Appellant with a returnable date of June 8, 2009. Having failed to receive a timely response, the PCRA court entered an order on June 3D, 2009, dismissing Appellant's first PCRA petition. Appellant did not seek appellate review.

On August 14, 2009, Appellant filed his second pro se PCRA petition in which he asserted as a basis for post-conviction relief a violation of his constitutional rights and the ineffectiveness of trial counsel. Specifically, Appellant claimed that trial counsel was ineffective for failing to: 1) fully investigate possible defenses and

mitigating circumstances surrounding the commission of the crimes; 2) explore Appellant's mental health issues; and 3) provide mitigating factors at the plea and sentence hearing, all resulting in the entry of an unknowing and involuntary plea. PCRA counsel was appointed on November 2, 2009. Upon review of the record, on March 16, 2010, PCRA counsel once again filed a motion to withdraw and a Turner/Finley no-merit letter. Initially, PCRA counsel determined that the issues raised by Appellant in his second PCRA petition were waived because they were not raised in his first PCRA petition. PCRA counsel further determined that Appellant's mental health issues were properly addressed at the time of the plea and sentencing hearing, and asserted that his examination of the record revealed no other meritorious issues.

On March 19, 2010, the PCRA court entered its order permitting PCRA counsel to withdraw and issuing a rule upon Appellant to show cause why the court should not dismiss his second PCRA. In response to the PCRA court's order, Appellant filed a motion to show cause on April 1, 2010, in which he reiterated the claims he made in his first PCRA petition regarding the sentences imposed, as well as disagreeing with PCRA counsel's conclusion that the mental health issues were adequately reviewed at the time of the plea and sentencing hearing. On April 9, 2010, the PCRA court dismissed Appellant's second PCRA petition without a hearing. This timely appeal followed.

ECF No. 11-1, pp. 1-4. On December 10, 2010, the Superior Court affirmed the dismissal of

Petitioner's second PCRA Petition. Petitioner did not file a petition for allowance of appeal.

Petitioner filed his Petition for a Writ of Habeas Corpus with this Court on February 3, 2011

wherein he raises the following claims.

1. Arson Endangering Persons count should have been merged with Risking/Causing a Catastrophe count for sentencing purposes.

2. Ineffective assistance of trial counsel for failure to investigate possible defenses and mitigating circumstances, failure to explore the defendant's mental health issues, failure to provide mitigating factors at the plea and sentence hearing, failure to oppose imposition of consecutive sentences for counts that should have merged, and failure to oppose sentence outside the guideline range.

**B. Standards Governing Federal habeas Corpus Review**

1.      Exhaustion Requirement

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have "fairly presented" his constitutional and federal law issues to the state courts through direct appeal, collateral review, state *habeas* proceedings, *mandamus* proceedings, or other available procedures for judicial review. *See, e.g.*, Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996). To "fairly present" a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted. McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999). A petitioner can "fairly present" his claim through: (a) reliance on pertinent federal cases; (b) reliance on state cases employing constitutional analysis in like fact situations; (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. *Id*. at 260.

In addition, in order to exhaust his claims, a habeas corpus petitioner must "properly present" his claims to the state courts. In this regard, a petitioner must invoke "one complete round" of the applicable State's appellate review process, thereby giving the courts of that State "one full opportunity" to resolve any issues relevant to such claims. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (holding that a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court and highest court before exhaustion would be

considered satisfied). Even if a state court refuses to consider the claim on procedural grounds, it is still exhausted as long as the state court had the opportunity to address it. Bond v. Fulcomer, 864 F.2d 306, 309 (3d Cir.1989). The petitioner has the burden of establishing that exhaustion has been satisfied. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).[1]

2.    Procedural Default Doctrine

The mere fact that a petitioner can satisfy the statutory exhaustion requirement on the ground that further state procedures are unavailable does not necessarily mean that a federal court can reach the merits of his or her claims. Claims deemed to have been exhausted because of a state procedural bar are procedurally defaulted, precluding a federal court from proceeding to address them further. In Cone v. Bell, 556 U.S. 449, 129 S.Ct. 1769 (2009), the United States Supreme Court explained:

> It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment. In the context of federal habeas proceedings, the independent and adequate state ground doctrine is designed to ensure that the States' interest in correcting their own mistakes is respected in all federal habeas cases. When a petitioner fails to properly raise his federal claims in state court, he deprives the State of an opportunity to address those claims in the first instance and frustrates the State's ability to honor his constitutional rights. Therefore, consistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, we have held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the

---

1 On May 9, 2000, the Pennsylvania Supreme Court issued In re: Exhaustion of State Remedies in Criminal and Post Conviction Relief Cases, No. 218 Judicial Administration Docket No. 1 (Order 218), which provides that direct criminal appellants and PCRA petitioners need not file petitions for allowance of appeal in order to exhaust all "available" state remedies for habeas corpus purposes. Order 218 applies only prospectively and it has no application to cases involving petitioners whose time for seeking discretionary review expired prior to May 9, 2000. Wenger v. Frank, 266 F.3d 218, 226 (3d Cir. 2001).

state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review.

<u>Cone</u>, 129 S.Ct. at 1780 (internal quotations and citations omitted).

Notwithstanding, habeas corpus review is not barred every time that a state court invokes a procedural rule to preclude its review of the federal claims asserted by a state prisoner. A state procedural rule can preclude federal habeas corpus review only if it is "firmly established" and "consistently and regularly applied" by the State's courts. <u>Kindler v. Horn</u>, 542 F.3d 70, 78 (3d Cir. 2009). Specifically, the state rule must speak in unmistakable terms, and the state courts' refusal to review a petitioner's claim must be consistent with decisions in similar cases. *Id*. at 79. An "occasional act of grace by a state court in excusing or disregarding a state procedural rule does not render the rule inadequate." <u>Banks v. Horn, 126 F.3d 206, 211 (3d Cir. 1997)</u> (quoting <u>Amos v. Scott</u>, 61 F.3d 333, 342 (5th Cir. 1995)). A state rule is adequate to preclude federal habeas corpus review if it is applied by state courts in "the vast majority of cases." <u>Dugger v. Adams</u>, 489 U.S. 401, 410, n. 6 (1989).

Moreover, violations of a state's procedural rules may constitute an independent and adequate state ground sufficient to invoke the procedural default doctrine even where no state court explicitly has concluded that a petitioner is procedurally barred from raising his claims. <u>Glass v. Vaughn</u>, 65 F.3d 13, 15 (3d Cir. 1995), *cert. denied*, 516 U.S. 1151 (1996). A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either: 1) "cause" for the default *and* "actual prejudice" as a result of the alleged violation of federal law; or 2) failure to consider the

claims will result in a "fundamental miscarriage of justice."  <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991).

### C. Fair and Proper Presentation of Petitioner's Claims in the State Courts

The Court's initial inquiry regarding the exhaustion requirement is whether petitioner "fairly presented" his federal claims to the state courts.  To meet the fair presentation criterion, the same factual and legal bases for a claim must be presented to the state court to allow the state a reasonable opportunity to address the claim and correct any violation of federal rights.  The second criterion of the exhaustion requirement requires a petitioner to "properly" present his claims to the requisite state courts.  In this regard, a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court and highest court in accordance with the state's applicable procedural rules before exhaustion will be considered satisfied.

In his first habeas claim, Petitioner asserts that the Arson/ Endangering Persons counts should have been merged with Risking/Causing a Catastrophe count for sentencing purposes.  In his first PCRA petition, the defendant alleged ineffective assistance of trial counsel in permitting the imposition of a sentence greater than the lawful maximum by reason of the alleged merger and improper grading of the offenses to which the defendant entered guilty pleas.  The PCRA Court examined both claims and found them to be without merit; however, Petitioner failed to appeal the denial of his first PCRA Petition to the Superior Court of Pennsylvania.

Petitioner presented these claims again in his second PCRA Petition.  However, both the PCRA Court and Superior Court refused to review these claims on the basis that they were "previously litigated" under Pennsylvania state law.  In this regard, the PCRA requires that, in order

to be eligible for relief under the PCRA, a petitioner is required to demonstrate that his claims have not previously litigated or waived under Pennsylvania law. 42 Pa. Cons. Stat. § 9543(a)(3). An issue is deemed to have been "previously litigated" if: 1) the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue; or 2) it has been raised and decided in a proceeding collaterally attacking the conviction or sentence. 42 Pa. Cons. Stat. § 9544(a). Because the question of the illegality of the sentences had been raised and decided in Petitioner's first PCRA proceeding, both the PCRA Court and Superior Court refused to review these claims in Petitioner's second PCRA proceeding on the basis that they had been "previously litigated" under Pennsylvania state law.

The Pennsylvania federal courts have held that, in like circumstances, this state rule constitutes an independent and adequate state law ground that precludes federal court review under the procedural default doctrine.[2] *See, e.g.*, Sistrunk v. Vaughn, 96 F.3d 666, 674 (3d Cir. 1996) ("Batson" equal protection issue previously litigated in Superior Court and, thus, barred under

---

2. Moreover, Petitioner's failure to preserve this issue for appeal results in procedural default for purposes of federal habeas review. *See* Sistrunk v. Vaughn, 96 F.3d 666, 670 n.4 (3d Cir. 1996) (applying Pa. R. App. P. 302(a) and recognizing that the Pennsylvania rules dictate that an issue raised at the trial level but not preserved on appeal will not be considered by any subsequent appellate court). The circuit court's finding of procedural default is based on the court's recognition that Pennsylvania law specifically and unambiguously provides that the failure to preserve an issue for appeal results in waiver of that issue. Because these state procedural laws speak in unmistakable terms, are firmly established and regularly followed in Pennsylvania, and are independent of federal law, the Court of Appeals for the Third Circuit consistently has held that waiver under such rules results in procedural default for purposes of federal court review. *Cf.* Lines v. Larkins, 208 F.3d 153, 162 (3d Cir. 2000) (noting that the Pennsylvania courts strictly adhere to the letter of its procedural rules and will not address claims that are not properly asserted as required under the Pennsylvania Rules of Appellate Procedure). *See also* Werts v. Vaughn, 228 F.3d 178, 194 (3d Cir. 2000); Doctor v. Walters, 96 F.3d 675, 681 (3d Cir. 1996) (recognizing that the Pennsylvania courts would hold that Doctor waived the right to assert his claim because his submissions to the Superior Court and/or

PCRA); <u>Laird v. Horn</u>, 159 F.Supp.2d 58, 76 (E.D. Pa. 2001); (holding that a claim previously litigated on state grounds and thus not reviewable during PCRA proceedings is procedurally defaulted); <u>Blackwell v. Larkins</u>, Civil No. 97-1999, 1998 WL 401752, at *4–5 (E.D. Pa. July 6, 1998) (same).  Thus, Petitioner procedurally defaulted these claims.

In his second habeas claim, Petitioner asserts ineffective assistance of trial counsel for failure to investigate possible defenses and mitigating circumstances, failure to explore the defendant's mental health issues, failure to provide mitigating factors at the plea and sentence hearing, failure to oppose imposition of consecutive sentences for counts that should have merged, and failure to oppose a sentence outside the guideline range.  With respect to his claims of ineffective assistance for failure to investigate the case and present mitigation evidence, Petitioner did not present these claims in either of his PCRA proceedings.  Both the PCRA Court and Superior Court refused to review these claims in Petitioner's second PCRA proceeding on the basis that that they had been waived under Pennsylvania state law.  In this regard, an issue is considered "waived" under the PCRA if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding.  42 Pa. Cons. Stat. § 9543(b).  The Pennsylvania Courts concluded that Petitioner's failure to raise these claims in his first PCRA petition resulted in waiver because both of the issues were known and available to the Petitioner at the time of the filing of his first PCRA petition.

The Pennsylvania federal courts universally have held that the PCRA waiver rule is an independent and adequate state law ground that precludes federal court review under the procedural

_____

the Pennsylvania Supreme Court failed to include the claim).

9

default doctrine absent a showing of cause and prejudice, or a fundamental miscarriage of justice. *See, e.g.*, Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996); Neely v. Zimmerman, 858 F.2d 144, 148 (3d Cir. 1988) (citing Wainwright v. Sykes, 433 U.S. 72, 85-86 (1977)); McAndrews v. Chesney, 1998 WL 136508 (E.D. Pa. March 23, 1998) (PCRA waiver provision is an "independent and adequate" state procedural ground to support procedural default); Smith v. Vaughn, 1997 WL 338851, at *4 (E.D. Pa. June 17, 1997) (same); Diventura v. Stepanik, 1996 WL 107852 (E.D. Pa. 1996) (same). Thus, Petitioner procedurally defaulted these two claims also.

With respect to his claim that trial counsel rendered ineffective assistance for failing to oppose the imposition of sentences outside the sentencing guidelines, Petitioner raised this claim for the first time in his appeal from the dismissal of his second PCRA Petition. The Superior Court determined that this issue was waived under Rule 302 of the Pennsylvania Rules of Appellate Procedure, which provides as follows. "General rule. Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." This procedural rule is consistently and regularly applied in Pennsylvania. *See, e.g.*, Schmidt v. Boardman Co., 608 Pa. 327, 355, 11 A.3d 924, 941 (Pa. 2011); Stimmler v. Chestnut Hill Hosp., 602 Pa. 539, 552 n. 7, 981 A.2d 145, 153 n. 7 (2009); Commonwealth v. Fletcher, 986 A.2d 759 (Pa. 2009) (holding that claims not raised in the PCRA court are waived and cannot be raised for the first time on appeal to the Superior Court). Thus, Petitioner procedurally defaulted this claim as well.

As stated above, a petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either: 1) "cause" for the default *and* "actual prejudice" as a result of the

alleged violation of federal law; or 2) failure to consider the claims will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). To satisfy the cause standard, a petitioner must demonstrate that some objective factor external to the defense impeded his or her efforts to raise the claim in state court. McCleskey v. Zant, 499 U.S. at 493 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986). To show prejudice, a petitioner must demonstrate that the error worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions, not merely that the error created a "possibility of prejudice." Carrier, 477 U.S. at 494.

To the extent that Petitioner contends that his claims were not properly presented to the state court due to the error of PCRA counsel, counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation. Coleman, 501 U.S. at 755. The Supreme Court has determined that neither the Fourteenth Amendment nor the Sixth Amendment require effective assistance of counsel during collateral criminal proceedings. Id. at 757. Thus, any attorney error that has led to the default of a petitioner's claims on collateral appeal cannot constitute cause to excuse a default in a federal habeas petition. Id. See also Pennsylvania v. Finley, 481 U.S. 551, 558 (1987). As he has failed to allege cause, I need not determine whether he can show prejudice.

Where a petitioner cannot make a showing of "cause and prejudice," a federal court may nevertheless consider the merits of his or her unexhausted claims under circumstances in which the failure to adjudicate such claims would result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. This exception to the procedural default doctrine is based on the principle that, in certain instances, "the principles of comity and finality that inform the concepts of cause and

prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" Murray v. Carrier, 477 U.S. 478, 495 (1986) (quoting Engle v. Isaac, 456 U.S. 107, 135 (1982)). The "prototypical example" of a miscarriage of justice is a situation in which an underlying constitutional violation has led to the conviction of an innocent defendant. Sawyer v. Whitley, 505 U.S. 333, 340 (1992). In that instance, the merits of a petitioner's claims can be considered notwithstanding his or her failure to raise them before the state courts.

In order to avail himself or herself of this exception to the procedural default rule, a petitioner must make a substantial showing that he or she is actually innocent of the crime for which he or she is incarcerated. Schlup, 513 U.S. at 324. "To be credible, such a claim requires [the] petitioner to support his [or her] allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Id.* If this requirement is satisfied, the federal court must consider "whether it is more likely than not that no reasonable juror would have convicted [the petitioner] in light of the new evidence." Hubbard v. Pinchak, 378 F.3d 333, 340 (3d Cir. 2004). This is a stronger showing than is required to establish prejudice and is found only in a truly "extraordinary" case. Schlup, 513 U.S. at 322. While the petitioner's innocence need not be determined with "absolute certainty" at this "gateway stage," his or her burden is to demonstrate that, in light of the new evidence, it is more likely than not that *any* reasonable juror would have reasonable doubt as to his or her guilt. House v. Bell, 547 U.S. 518, 538 (2006). Petitioner has not alleged the existence of any evidence, let alone new and credible evidence, to support a claim of actual innocence. Consequently, this Court is precluded from reviewing his procedurally defaulted claims.

Petitioner's final claim asserts ineffective assistance of trial counsel for failing to investigate the defendant's mental health issues. In his second PCRA petition, he framed this issue as a claim that the defendant was not mentally competent to enter a knowing and voluntary guilty plea. Although the matter of Petitioner's mental competence was not raised in his first PCRA Petition; the Supreme Court of Pennsylvania has held that a defendant's failure to previously raise a claim of incompetency to stand trial does not constitute a waiver of this claim for purposes of the PCRA. Commonwealth v. Brown, 582 Pa. 461, 872 A.2d 1139 (2005). Consequently, this issue was reviewed on the merits during Petitioner's PCRA proceeding. As such, I will review this claim under the applicable standard of review as set forth below.

### D. Standard of Review

In describing the role of federal habeas proceedings, the Supreme Court of the United States, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996, (AEDPA), which further "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

Amended Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C.§ 2254(d).

"Clearly established Federal law" should be determined as of the date of the relevant state-court decision and is limited to the record that was before the state court that adjudicated the claim on the merits.  Greene v. Fisher, ___ U.S. ___, 132 S.Ct. 38 (2011); Cullen v. Pinholster, 563 U.S. ——, 131 S.Ct. 1388, 1398 (2011).

"A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir.2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  Few state court decisions will be "contrary to" Supreme Court precedent.  The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent.  A state-court decision 'involves an

unreasonable application' of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular ... case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. Williams, 529 U.S. at 407.

A recent decision of the Supreme Court illustrates the deference that the federal courts must accord to state court decisions. In Renico v. Lett, ___ U.S. ___, 130 S.Ct. 1855 (May 3, 2010), the Supreme Court reviewed the Court of Appeals for the Sixth Circuit's grant of a writ of habeas corpus to a defendant who was retried for murder following the trial judge's grant of a mistrial after the jury had deliberated for at least four hours following a relatively short, and far from complex, trial. The Michigan Supreme Court had concluded there was no violation of the Double Jeopardy Clause because the trial court exercised its sound discretion. The federal district court granted a writ of habeas corpus and the Sixth Circuit affirmed, both concluding that the trial court's declaration of a mistrial constituted an abuse of discretion because there was no manifest necessity. The Supreme Court reversed.

> It is important at the outset to define the question before us. That question is not whether the trial judge should have declared a mistrial. It is not even whether it was an abuse of discretion for her to have done so-the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of ... clearly established Federal law." § 2254(d)(1).

Lett, 130 S.Ct. at 1862. The Supreme Court further instructed:

> It is not necessary for us to decide whether the Michigan Supreme Court's decision - or, for that matter, the trial judge's declaration of a mistrial - was right or wrong. The latter question, in particular, is a close one. As Lett points out, at a hearing before the Michigan Court of Appeals, the state prosecutor expressed the view that the judge had in fact erred in dismissing the jury and declaring a mistrial. The Michigan Supreme Court declined to accept this confession of error, People v. Lett, 463 Mich. 939, 620 N.W.2d 855 (2000), and in any event - for the reasons we have explained - **whether the trial judge was right or wrong is not the pertinent question under AEDPA.**

*Id*. at 1865, n. 3 (emphasis added).[3]

Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id*. (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1982)).

### E. Competency to Plead Guilty

In his last claim Petitioner asserts his trial counsel rendered ineffective assistance by failing to assess his mental competency. A criminal defendant has a due process right not be tried unless he is competent, Pate v. Robinson, 383 U.S. 375, 378 (1966), and he may not waive his right to counsel or plead guilty unless he does so "competently and intelligently," Johnson v. Zerbst, 304 U.S. 458,

---

3. *See also* Harris v. Ricci, 607 F.3d 92, 99 (3d Cir. 2010) (explaining and applying Lett).

468 (1938). The standard for competence to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402 (1960) (per curiam ) (internal quotation marks omitted). The standard of competency to enter a guilty plea is the same as the competency standard for standing trial. Godinez v. Moran, 509 U.S. 389 (1993).

Thus, in reviewing a guilty plea, the Court must undertake a two-part inquiry.

A finding that a defendant is competent to stand trial, however, is not all that is necessary before he may be permitted to plead guilty or waive his right to counsel. In addition to determining that a defendant who seeks to plead guilty or waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary. In this sense there is a "heightened" standard for pleading guilty and for waiving the right to counsel, but it is not a heightened standard of competence.FN

FN. The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ability to understand the proceedings. The purpose of the "knowing and voluntary" inquiry, by contrast, is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced

.

Moran, 509 U.S. at 400-401, n.12 (1993) (internal citations omitted) (footnote in original).

A trial court's failure to inquire into competency where there is reason to doubt a defendant's competency violates due process because it deprives the defendant of his right to a fair trial. Drope v. Missouri, 420 U.S. 162 (1975). In determining whether an examination into a defendant's competency is required, the Supreme Court has set forth the following guideposts.

. . . [E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors

standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

Drope, 420 U.S. at 180. As in any criminal case, however, a competency determination is necessary only when a court has reason to doubt the defendant's competence. Godinez, 509 U.S. at 402, n.13.

In its review of this claim, the PCRA Court held as follows.

The record of the plea proceedings discloses the following examination of the defendant by his trial counsel at Plea Transcript (P.T.), pages 5-7:

> Q.    Now, Thomas, in reviewing your plea colloquy form with you I noted that in answer to Question 8 and Question 7, particularly when you were asked if you have been a patient in a mental institution or ever been treated for a mental illness your answer to that question was yes; is that correct?
>
> A.    Yes.
>
> Q.    When asked why, you designated in your answer that you have suffered from bipolar disorder with a tendency to dishonesty; is that correct?
>
>        Let me show you the form and refer you to Question 8. What does your handwriting say-strike that, Your Honor. Under Question 7, what does your handwriting say?
>
> A.    I am diagnosed with bipolar.
>
> Q.    Okay. So you have been diagnosed with bipolar disorder?
>
> A.    Yes, sir.
>
> Q.    And have you been under the care and treatment of physicians for that disorder?
>
> A.    I have except for the last three years.

Q.      Okay. Tell me about the last three years. Why haven't you?

A.      Well, I, me and my doctor, I decided that to go off my medication, because I was feeling okay.

Q.      Okay. But for purposes of today, Tom, are you taking medication and being treated for your bipolar disorder while you have been incarcerated?

A.      I am taking medication at the Beaver County Jail, yes, and that is all I am doing is taking medication.

Q.      Okay. Question 8 in the plea colloquy form, Tom, asked you if you are presently being treated for a mental illness.  Do you still feel you have sufficient mental capacity to understand what you are doing today and to understand the questions both in the colloquy form and what are going to be asked of you in open Court, your answer is without the medication you don't understand, you would not be able to understand.  Do you recall answering the colloquy that way?

A.      Yes.  If I wasn't, had my medication I don't think I would understand everything.

Q.      Well, let's be abundantly clear on the record and I want the Judge to understand.  Do you understand why you are here today?

A.      Yes, sir.

Q.      Do you understand that it's to enter a plea in a case filed by the Commonwealth against you with very serious criminal charges attached to it?

A.      Yes, sir.

Q.      And have you, in fact, been taking medication or the medication that is prescribed to you for your bipolar disorder that enables you to fully understand why you are here today, have you?

A.      Yes, I have.

Q.     Is there any reason why either the Judge or I should be concerned about whether you understand why you are here today?

A.     No.

The court further questioned the defendant at P.T., pages 15-17, as follows:

THE COURT: I want to just review with you briefly the situation with your mental health problem. Now, you indicated earlier that you were diagnosed with bipolar and that was quite some time ago; is that right?

THE DEFENDANT:  I was diagnosed with bipolar about '92, '93.

THE COURT: And from then until now you have been under a doctor's care and you have been taking medication?

THE DEFENDANT: Up until about two years ago.

THE COURT: Now, you indicated while you have been incarcerated you have been taking the medication?

THE DEFENDANT: Yes, sir.

THE COURT: Correct?

THE DEFENDANT: Yes, Your Honor, I have been.

THE COURT: What do you take?

THE DEFENDANT: I take Tegretol and Wellbutrin.

THE COURT: Did you take that today?

THE DEFENDANT: This morning, yes, sir, yes, Your Honor.

THE COURT: You indicated earlier that by taking that medication that helps you better understand what you're involved in; is that correct?

THE DEFENDANT: Yes, it helps me focus.

> THE COURT: I am going to ask you this question. Now, the fact that you suffer from that condition and you take medication for that condition does that in any way affect your ability to understand what is going on here in this courtroom today?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Is your mind clear?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: You're focused?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And you understand why you are here?
>
> THE DEFENDANT: Yes, Your Honor.

In addition, in answers to questions on the written guilty plea colloquy form, the defendant indicated that he was treated for bipolar, was taking medication and had sufficient mental capacity to understand the proceedings as long as he was on his medication. The record clearly demonstrates that the defendant was fully aware of the charges to which he was pleading guilty and the plea agreement, which provided for the recommended sentences to be imposed for those charges. The defendant thus has failed to meet his burden of proof that he was incompetent to stand trial.

ECF No. 11-1 (adopting PCRA Court Opinion, ECF No. 11-6)).

The Court of Appeals for the Third Circuit has held that a state trial court's determination that a defendant's plea is voluntarily and knowingly entered is an implied finding of fact that he was competent.

> If a defendant does not have the "ability" to understand the proceedings, it is impossible that he "actually does" understand them. It follows, then, that a finding of competence is a prerequisite to a determination that a plea is knowing and voluntary. Thus, the state trial court's determination that [the defendant's] plea was knowing and voluntary, included an implied finding that he was competent.

Taylor v. Horn, 504 F.3d 416, 431 (3d Cir. 2007).

On federal habeas review, this Court must presume that the state court finding that Petitioner was competent is correct unless Petitioner has rebutted the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); <u>Taylor</u>, 504 F.3d at 430-38.  To this end, Petitioner has not submitted any evidence whatsoever to rebut this finding.  Thus, he is not entitled to habeas relief as to his fourth claim.  *Accord* <u>Merrero v. Horn</u>, Civil No. 00-2155, 2008 WL 3833382 (W.D. Pa. Aug. 15, 2008).

### F. Certificate of Appealability

Section 2253 generally governs appeals from district court orders regarding habeas petitions.  Section 2253(c)(1)(A) provides that an appeal may not be taken from a final order in a habeas proceeding in which the detention arises out of process issued by a State court unless a certificate of appealability has been issued.  A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right.  28 U.S.C. ' 2254(c)(2).  Here, the record fails to show a violation of Petitioner's constitutional rights.  Accordingly, a certificate of appealability should be denied.

## III.  <u>CONCLUSION</u>

Based on the discussion above, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. ' 636(b)(1)(B) & (C)] and the Local Rules of Court, the parties shall have fourteen days from the date of the service of this report and recommendation to file written objections thereto.  Any party opposing such objections shall have fourteen days from the date on which the objections are served

to file its response.  A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

/s Cynthia Reed Eddy
Cynthia Reed Eddy

January 18, 2012                              United States Magistrate Judge

Thomas E. Reinhardt
HT-7098
SCI at Smithfield
PO Box 999
1120 Pike Street
Huntingdon, PA 16652